The final matter, No. 25-1799, Greater Boston Legal Services et al. v. United States Department of Homeland Security et al. At this time, would counsel for the appellants please come to the podium and introduce yourself on the record to begin? Good morning. May it please the Court, Sandra Maslink on behalf of the plaintiff's appellants. I'd like to reserve two minutes for rebuttal, please. Ian, before you start the clock, I don't know whether counsel is prepared to argue standing today. So, what I'd like to propose, and this is with the permission of the presiding judge who has granted this permission, that each side brief the Supreme Court's decision in whatever that case is. I have an alliance for Hippocratic medicine, and then there are subsequent cases I think from, well, for sure from the Fourth Circuit, maybe from the Sixth Circuit, maybe some others. If you would give a supplemental briefing, say, within 20 days, 10 page per side, I think simultaneous briefing ought to be good. Unless you want to talk about it today. Thank you, Your Honor. I think we'll take you up on the offer to brief the issue. Plaintiffs in this case challenge a DHS policy under which DHS and its subcomponent agencies routinely decline to disclose critical information to non-citizens and their counsel in immigration proceedings, and instead direct them to file Freedom of Information Act requests. But FOIA is a transparency law. It's disconnected from the needs of immigration proceedings, and it has undisputed limitations. FOIA responses routinely arrive too incomplete, too heavily redacted, and too late to be of use in the immigration context. As a result, the policy violates the government's statutory and regulatory disclosure obligations under 8 U.S. Code 1229A and 8 CFR 103.2B16, both of which are implicated in plaintiff's claim here. The district court wrongly applied the plausibility standard to dismiss part of plaintiff's claim at the motion to dismiss stage, and I'd like to begin there. As this court made clear in its decision in ATA, the plausibility standard has no place in APA review, where the focus is on the administrative record. And while the ATA court recognized a narrow exception for cases in which no administrative record could support the claim pled, that's not this case. Because here, the amended complaint, read in the light most favorable to the plaintiffs, which the district court failed to do, pled the existence of an affirmative DHS policy applied across DHS subcomponent agencies, requiring noncitizens and their counsel to rely on the ineffective FOIA process in contravention of disclosure obligations. And the amended complaint detailed several manifestations of the policy, and highlighted in particular agency guidance sending disclosure requests through FOIA, even in the wake of the Ninth Circuit's decision in Dent v. Holder, where the court held that the government had improperly failed to turn over a noncitizen's alien file or A file during removal proceedings, and observed that the government's statutory disclosure obligations under section 1229, interpreting the government's statutory disclosure obligations under 1229A as satisfied through FOIA, raised a serious due process problem. Nevertheless, in the wake of Dent v. Holder, the government issued guidance in the form of Immigrations and Customs Enforcement form letter denying A file requests and directing requesters to FOIA. Additional guidance in 2013 from the ICE Office of the Principal Legal Advisor, directing noncitizens in removal proceedings to FOIA as the appropriate recourse, and their allegations of those manifestations of the policy in the amended complaint. And we submit that those manifestations of the policy define the scope of the policy in removal proceedings. It's worth also noting here that the administrative record on the narrowed portion of the claim that did proceed past the motion to dismiss. That's the asylum part of it, correct? Correct. Let me ask you a question, because it seems to me that you're lumping together, and that's something the government brings up, because there's removal proceedings, there's asylum, there's other countless immigration proceedings, and they're all very unique. And my impression is you're trying to lump them all together as part of one big, huge policy. Am I correct? Well, Your Honor, we're not trying to lump them together. We're alleging and arguing that based on the administrative record, the government has one policy that applies across DHS's subcomponent agencies. And we submit that that's not inherently implausible. Again, these are interrelated components of DHS, each of which rely on alien files during the course of a non-citizen's immigration proceedings. Would that still qualify as a discrete agency action? Because it seems to me that there can be different actions depending on what sub-agency or what parts of DHS you're dealing with. Yes, Your Honor. The policy as alleged and as we suggest is supported by the administrative record is a consistent policy across those subcomponent agencies of DHS of channeling disclosure requests to FOIA. So while the government suggests that there are certain disclosures in certain contexts, there might be some variability in what is disclosed in a particular proceeding, but the consistent policy across the board is to channel requests to FOIA instead of satisfying the statutory and regulatory disclosure obligations that the government has. And there's no requirement that a policy be uniformly applied in order to constitute discrete agency action. And again, both in the amended complaint and in the record on summary judgment, there are detailed instances from the plaintiffs in this case, also supported by the amicus brief filed here, where practitioners representing clients have appeared, for instance, at an asylum office requesting to see files for a particular non-citizen and are told, no, you can't review that record, you have to go file a Freedom of Information Act request. And just to pause perhaps on that for a moment, I mean, I think there are some pretty serious real-world consequences here as detailed in the amended complaint. Let me also ask, it seems to me, and again, this is an APA challenge, you're not bringing it as a due process challenge, but it would seem to me that what you're saying is that there's no due process, and I'm kind of comparing it to perhaps what you're equating, the relief you're seeking to undo the agency action, you know, kind of suggesting that these non-citizens are entitled to these documents as perhaps would a criminal defendant be in a criminal case in order to defend him or herself. That's my impression, am I correct? Well, Your Honor, there is a requirement of fundamental fairness in immigration proceedings. This Court's decision in Davis v. Lynch recognizes that non-citizens are entitled to fundamental fairness, and the plaintiffs here aren't seeking discovery, we're not seeking, you know, any particular policy be applied instead of the policy that the government currently has. We're simply seeking a declaration that the current policy does not comply with the government's disclosure obligations as set forth in 1229A and also in regulation. And if you were to prevail, what would happen then? There's no policy in effect. The government had to issue a new policy. That's right, Your Honor. We'd be seeking also an injunction of the policy and a remand to the agency to revise the policy consistent with the disclosure obligations that the government has. But how long has this, because it seems to me this policy has been in place for quite a while. This is not a policy of this administration. It was, as a matter of fact, I believe you filed the lawsuit in 2021, and the policy predated that for quite a while, am I correct? That's right, Your Honor. We don't identify a particular point at which we suggest the policy came into effect, and that's in part because we don't have a full administrative record here. The district court, you know, improperly, under Atiyah, dismissed a portion of the plaintiff's claim at the motion to dismiss stage. So we don't have an administrative record that reflects the policy across all of the defendant agencies. We were limited to the portion. But you do have it for the asylum. Yes, that's right. And it does seem to me that as you're articulating the argument today, the premise of your argument is that the various parts of DHS are violating their nondisclosure obligations, which does seem to be a legal issue. So, which cuts against, I think, a little bit your point that Atiyah bars the district court's conclusion here, because it seems to be a legal argument. But, so I'd like you to move to that question of whether or not there was a violation of any nondisclosure, or excuse me, disclosure requirement for any of the particular agencies. Yes, Your Honor. So if I could just address the Atiyah point. So Atiyah, in a footnote, recognized an exception where the plausibility standard might properly be applied to cases in which no administrative record could support the claim alleged. In other words, a legally flawed claim. And we suggest that that's not this case, because here, plaintiffs allege an affirmative policy that violates disclosure obligations set forth in regulation and statute. So now turning to 1229A, which is the statute that applies in the context of removal proceedings and sets forth the government's disclosure obligation in the context of those proceedings. 1229A provides that non-citizens shall have a reasonable opportunity to examine the evidence against them. And a violation of that statute was alleged in the amended complaint, and the amended complaint detailed the numerous ways in which the policy of channeling disclosure requests to FOIA is not a reasonable means of satisfying the disclosure obligations, because, in part, FOIA returns responses that are incomplete, missing key aspects of the record of the proceeding, heavily redacted, such that the non-citizens and their counsel can't even use the records in connection with their proceedings, unless it doesn't constitute any sort of reasonable opportunity to examine them. Are you making a timing argument with respect to 1229, specifically setting aside the CFR 103 for a moment, but on 1229, are you arguing that the disclosure needs to happen before a decision is rendered? Well, Your Honor, yes, we would suggest that similarly as with the regulation, an opportunity to examine the evidence against the non-citizen must occur in the context of the proceedings, not merely after the fact, because if it's only a disclosure after the fact, that doesn't actually provide any meaningful opportunity or reasonable opportunity in the case of removal proceedings. So where specifically in the language do you find a timing provision in 1229? Well, there's no specific timing reflected in the portion of the statute that I just was referring to. It simply provides that the alien shall have a reasonable opportunity to examine the evidence against them, to present evidence on their behalf. Are you saying it should be before the proceeding or because it's happening during the proceeding or after the government presents its case? That's when I assume you're able to review it, correct? Well, to some extent, Your Honor. I mean, there are certainly instances reflected in the record here where counsel or the non-citizen learns of a document for the first time in a removal proceeding, having already progressed through the affirmative asylum process. Let me again go back just comparing a little bit, you know, criminal proceedings. In criminal proceedings, you have discovery. And one of the provisions is Rule 26, Federal Rules of Criminal Procedure, or the Jenckler, known as Jenck's Act also. And you're entitled in criminal proceedings to statements of witnesses. But you're not entitled until that witness testifies. So it's not before. And we see that in criminal proceedings. And that's, up until today, it's constitutional. So I don't see much of a difference. You know, in a criminal case, you're not necessarily entitled to all the discovery right away. You know, how can you get that remedy in an immigration case, you know? Sure, Your Honor. Well, so I guess maybe it would be more useful to refer to the regulation here, which we do think, based on the plain text, establishes that it applies during the proceeding, not simply after the decision has been rendered, which is the government's position in this case, is that you don't, you're not even entitled to the information during the proceeding. Okay, anything else you want to briefly add? I know we cut some of your time. You have like 30 minutes, a second, one minute, or not? You have rebuttal? I'll hold for rebuttal. Thank you very much. Counsel for the athlete, please introduce yourself on the record to begin. Good morning, Your Honors. May it please the Court, Simon Jerome for the Federal Government. The Administrative Procedure Act limits judicial review to agency action as that term is defined in statute, specifically 5 U.S.C. Section 551.13. This court should affirm the judgment Berleau for the simple reason that, despite multiple opportunities to do so, the plaintiffs never demonstrated reviewable agency action. The District Court held that twice and cast doubt on the notion a third time. We submit that that's sort of the cleanest way to resolve this case. With the Court's leave, I'll address the agency action part first, unless there are any questions about the other two pieces. There are two related problems, Your Honors, with plaintiff's theory. The first is that under Section 551.13, the definition of agency action, it's defined to include a rule, an order, license, sanction, relief, or the equivalent or denial thereof. We know from the Southern Utah case, which I'll refer to as SUA from the Supreme Court, that all of those items share the characteristic of being circumscribed and discreet, as I believe Judge Helpe brought up in one of his questions to my sister counsel. There is nothing circumscribed or discreet about this so-called policy plaintiffs are alleging. That is apparent from the face of the complaint. The complaint describes how there are tons of different immigration proceedings that the four defendant agencies that issue in the suit oversee. We know that the information an individual non-citizen obtains depends on any number of factors. Depends on the type of proceeding at issue. Depends on the discretion possessed by the officer in that proceeding. Depends on what information they've provided to the government. Depends on innumerable things. There's nothing circumscribed or discreet there. And even I believe this came up in Judge Helpe's colloquy with my friend that, you know, there might be individual discreet actions, but you cannot do this under SUA. You cannot lump them all together and call them a reviewable policy. The second and related, I think, principle is that my friend never says what specific type of agency action they analogize this so-called policy to. As I mentioned, I cited from the statute, you won't see the word policy in the APA. I think the closest analog is to a rule. But there's nothing rule-like about this. As I say, in my view, a rule is under circumstances X, Y happens, or Y could happen. Again, there's nothing rule-like happening here. It depends on the type of proceeding you're in. It depends on, when I say it, the information you're receiving. Depends on the type of proceeding. Depends on the discretion of the officer. Depends on all sorts of factors. So it's a sort of thing you would say on an individual case-by-case basis. It had to be raised, and then at some point it might come to us on a BIA appeal, and we might have to say, yeah, at least that should have been provided for X, Y, Z reasons or something. But we can't do it, again, as I said, in a lump global manner. That's exactly right, Your Honor. There could be cases where it's actually provided. You know, depending, as you said, the immigration judge may order it. You might have an immigration prosecutor who's, here, have it, you know. That's exactly right, Your Honor. And I think it is particularly telling to look at the type of relief that would be granted. In the ordinary APA case, the relief that's granted is vacater of the rule. You say, this rule is void and of no effect. There's nothing really to vacate here. We don't have a statement. And I should add, to add another definition, if you look in Section 551 again, the APA definitions of what a rule is, it says a statement. That's not an accident. The APA says when the government expresses itself in defined form, that is reviewable. And then if the court determines that that's unlawful, that is what's vacated. Here, my friend is asking for all sorts of practices to be vacated. But I'm looking, like, for example, injury in fact. How are we to determine injury in fact? Because, again, there can be so many different scenarios. Again, if it's a particular plaintiff, then you might be able to narrow that, pinpoint that injury in fact. But is that a problem here? You know, we haven't briefed standing. I welcome Judge Howard's invitation to do so. You can brief that there. But, again, I'm just...  And I will say it makes it difficult. I think a lot is difficult about the merits analysis here, because under the APA, when you skip the important, I shouldn't say skip, that certainly was raised below. But when you move past, inappropriately past, the threshold way the APA envisions review taking place, it becomes awfully hard to analyze. Agency action is not a component of standing. But certainly the question of how you're interacting with the agency, we've never disputed that the plaintiffs interact with agencies in all sorts of ways. I think that that is uncontestable. But the question is, what is the government action being applied to you? And that is inchoate. That is, you know, so apologies for sort of bleeding some, a little, weaving a little bit of standing in here. But I think the point is the same, which is it is near impossible to determine how the government action is affecting you. But that is the point of APA. Let me analogize. We've been getting, in the last couple months, a lot of agency action cases. But usually when that comes out, there's a, the rule has changed, maybe overnight or, you know, really quickly, or, you know, there's a written policy or, you know, letters, you know, telling everybody this is the way it's handled now. We don't have that here. That's exactly right, Your Honor. And I think, you know. And there's no impediment. Today, the Attorney General could issue another memorandum and say, let's do it this way, or let's do it that way. And that, under the right circumstances, I don't want to, you know, there's a lot of facts not in evidence, but that would, you could review a statement, a sort of instruction. And I think. Actually, that's lacking here. That's exactly right. And I'll take this opportunity to respond to distinguish the New York versus Trump case, which is a recent decision of this court that my friend cited. In that case, my understanding is that there was an OMB directive for categorical funding freezes. That is a top-down command. There's no top-down command here. In effect, I would direct this court, again, to revisit SUA. I think that the description, what plaintiffs there called a land withdrawal review program, was just a lot of aspects of the way the agency was operating that they didn't like. That's exactly the same thing here. I would also recommend, we cited these cases, but I strongly recommend the court consult the Fourth Circuit's decision in the City of New York case. In particular, pages 432 to 34. The Fourth Circuit was confronted with a claim by plaintiffs. Another information disclosure case. Various federal agencies are obligated to send information to a national firearms registry database. And the plaintiffs, a group of municipalities and others, said DOD, the Department of Defense, is not complying with that obligation. And the Fourth Circuit, in a way that I think is very apposite here, wrote, it may be the case that in individual circumstances, we could point to a violation of law. But what you're asking us to do is to seize the reins of the way the agency sort of operates on a day-to-day basis. And there's a lot of good language in there, Your Honors, about why courts are not well-equipped to supervise that sort of programmatic challenge. I would reiterate here, I think, if you can imagine, I understood my friend to say that they would ask for an injunction. An injunction doing what? I mean, they're asking, I think, they would be asking for lots of particularized instructions on how the agency should run its sort of information disclosure practice in a very inchoate way. Is your argument, then, that the court should not have even gone to summary judgment on the asylum claim? So even as to ICE, you're suggesting that there was an insufficient basis to find a policy? That's exactly right, Your Honor. And so, you know, I think there's a little confusion. This case certainly had several sort of opinions that are the subject of it. The district court did hold that plaintiffs, the theory in their complaint, which my friend has repeated at the podium and which is all throughout their briefing, is that all of these agencies have a so-called policy. The district court rejected at either 17 or 18 of the addendum, said plaintiffs have not plausibly alleged such a policy. You can affirm that. And in my view, the appropriate next step is not to say, well, let me sort of refashion. I also heard my friend to say in their briefs, I read, you know, there's sort of an artificially limited version of their complaint. Respectfully, I don't believe the district court should have let it go that far. I don't think there was the need to say, well, you know, to sort of ferret out what might be. But it did happen. And we review the summary judgment record anyway. Absolutely. I just submit, Your Honor, I think it's for reasons I'm happy to get into. It's awfully hard to, what we're talking about at summary judgment is often, overall, it's the same. One's 12B6 and the other summary judgment. But it's, it's literally an identical ruling. But here you had some more, more detail for summary judgment. There was some limited discovery. There was, Your Honor. And I was surprised to hear my friend say they're not asking for discovery. They got it. This is an APA case. I will, you know, sort of reiterate what I think is common knowledge, which is that APA cases are ordinarily on the basis of an administrative record. But here, plaintiffs had another opportunity. They had a lot of discovery. They had 30B6 witnesses sit and testify. And despite all of that, the district court still, at the end of all of this, said there's no agency action. I agree, Judge Helpe, the legal issue of agency action is a through line that's reviewed de novo through all the decisions. I just say if the court wants to write a clean and simple opinion, I think the way to do it is to say the district court was correct to say there was no reviewable agency action as alleged in the complaint. And that ends the matter. I am happy to address the motion to dismiss in the summary judgment. Let me ask you one question, because I ask counsel the analogy to criminal cases, particularly the Jenks Act. And I don't know if you practice, do criminal work, but in a criminal case, a defendant is, as I mentioned earlier, not entitled to statements of witnesses until that witness has testified. So if in a criminal case, you're not entitled to a lot of information, actually, in a criminal case, you're not entitled to names of witnesses with a few constitutional exceptions beforehand. The discovery is quite limited. So my question is, why then should that sort of discovery or information be available? And again, here, as a matter of fact, in a criminal case, you might not even get stuff through Freedom of Information Act. Here you can get it. But I don't know if you had anything to react to that, what I was asking opposing counsel. I'm hesitant to comment on criminal law, about which I have very little knowledge. I will say, Your Honor, I think the premise of your question is, would it be a better way to run the system to have pre-proceeding discovery or exchange of information in any individual case? The fact that you're asking that question says that this is not an APA case. I think that an APA case asks, well, first I would ask. That was what I was asking. Isn't this more of a due process challenge? And it would have to be raised, or not in this case, due process issue. But isn't this really a due process thing? I take that to be the gravamen, whether under constitutional due process or somewhere else. I take that to be the gravamen of what my friends are saying, is that this is not a good way to run the system. With respect, that is not a sufficient predicate for an APA challenge. You need to identify either for the contrary to law challenge, a particular provision of law that says this must happen, or arbitrary and capricious. I mean, we know from case after case that is a very high standard. And I take the thrust, insofar as my friends are not relying in their arbitrary and capricious claim on the violation of a legal duty, to the point, Judge Dunlap, that you brought up with my friend. I take the remainder of the claim, such as it is, which I will add evolved over the course of briefing, from motion to dismiss to summary judgment. But I take the rest of the claim, so to speak, just to be, we don't like the way the system works. And we know from SUA, we know from decisions of this court's. Is it that, or are they arguing that essentially the agencies didn't consider certain factors? So if I point you to, I think it's paragraph 40 on Joint Appendix 85, so that they apply their nondisclosure policy without regard to whether the records would be released in response to a FOIA request, it goes on. So is that a failure to consider argument, as opposed to the rest of the gravamen of the complaint, which is that there is a violation of various disclosure obligations? I think with the benefit of the hindsight of the summary judgment briefing, it's possible to read it that way. I don't think, insofar as the challenge is to the district court's decision on a motion to dismiss, I think it's incumbent on counsel to articulate clearly what the legal theory is. And I think if we're sort of searching around, it's appropriate to hold that against the other side. What I will add, though, is that, you know, I mentioned, I've emphasized agency action so heavily, because without the agency action, the question becomes, when the agency took a step that we disputed ever took, did it consider certain factors? And that question, I mean, I don't mean to avoid or sort of needlessly complicate things, but I think the question becomes awfully hard to answer because you're saying, did the agency, just in existing and carrying out its functions every day, fail to consider something? I mean, the reason the APA insists on agency action is to say, when you made this decision, did you fail to consider something? Now, again, I say that this is part of the problem, also, that failure to consider relies on the notion that they needed to consider something else. So in the end, it doubles back on a legal disclosure obligation. I think that's the heart of it, Your Honor. I think that, and you know, in my friend's presentation, I understood her to repeat that there are sort of legal obligations. I think that's the meat of the matter. And I think that's why the district court focused on that. I will say insofar as they did have the opportunity to raise their failure to consider arguments at some rate judgment, they did so in the district court in the final few pages of its of its opinion, dismiss those very quickly. I mean, it's in just a couple paragraphs. The district court did say, listen, insofar as we're talking at this really high 10,000 foot level of generality, yes, the agency, USCIS in this case, has considered sort of the things it needs to consider, has accounted for the needs to disclose information. And I recognize that that's very ethereal, right? That's very in the air. But I think that's by consequence of saying, well, we're going to permit this to be considered an agency action, which I will reiterate, the district court said it's not. But again, sort of saying, I'm going to give you another chance that even if it were, there's no arbitrary and capricious action here. And so I think that even if you thought the legal duty piece was more straightforward, they raised these arguments, the sort of rest of their claim at summary judgment, and it was appropriately rejected. Also, let me ask you or assume for purposes of this question, and again, it's not government admitting anything, but let's assume that what is happening, trying to get these documents, get this sort of pseudo-discovery, it's unfair. But my question is, even if it's unfair, is that remediable or reviewable under the APA? I think that's the underlying question. Because I know this is, let me not use unfair, let's say it's very uncomfortable for attorneys who are representing non-citizens. But if it's unfair or uncomfortable, that's not an APA remedy, am I correct? That's exactly right, Your Honor. It would have to either maybe Congress rehaul the whole immigration process, or maybe the executive branch can also do it. But it's not an APA solution. May I answer? Yeah. Yes. Yes, absolutely. And I think I would once again direct this court to the city of New York. If I'm not mistaken, Judge Wilkinson wrote, I think, addressed this exact point, said the focus, the place you should be taking your complaints is to the agency itself or to Congress. It's not the place of the courts to say we could design a better system. And so for those reasons, unless there are further questions, we would ask that this court affirm. Any further questions? Okay. Thank you, Counsel. Thank you. Counsel will have two minutes for rebuttal now. Please reintroduce yourself on the record to begin. Sandra Massalink on behalf of the plaintiff's appellants. Your Honors, I think what the government's position boils down to here is that the government would be able to insulate any number of policies from APA review simply by declining to issue a top-down directive and suggesting this isn't a policy, it's just how it's always been done. And the government, in fact, took a similar position in this case because they insisted that there was no policy until the production of the administrative record, at which point they acknowledged, oh, here's our actual policy within the context of USCIS for disclosure. And we submit that had the rest of the case proceeded past the motion to dismiss as well, the administrative record would have similarly reflected the actual policy of the government in the context of removal proceedings. And that's the policy that the plaintiffs in this case have challenged. With respect to the arbitrary capriciousness portion of the case, which I'd like to turn to now, I think the district court erred in concluding that the claim couldn't succeed because the district court concluded at summary judgment that the regulation wasn't violated. But in reaching that conclusion, the district court really didn't engage with the record, including the record reflecting no rationale for the policy and a failure by USCIS to tie its adoption of the nondisclosure policy to the problem it purports to solve in the 1994 reforms, which was what was pointed to as the origins of the policy. And the problem that the 1994 reforms purport to solve is all about the efficiency of the immigration system. And I think, Tohtelpe, some of your questions sort of got to the implications of how a resolution here would be reached and would it just create all of these additional inefficiencies. But I would suggest, Your Honors, that the current system is highly inefficient, forcing non-citizens and their counsel to go to extreme lengths to represent non-citizens in these proceedings. Your Honors, we respectfully request that the court reverse the judgments of the district court and remand for further proceedings. Thank you. Okay. Thank you, Counsel. And let me add this. And this is, regardless whether you prevail or not prevail on the case, I just want to, this is my personal statement, but it's important to work, as Greater Boston Legal Services does, you know, you can't win them all, but sometimes you do, sometimes you don't. But it's important that we have litigants who come to the courts and represent the interests of folks who otherwise couldn't. So, thank you very much. That concludes argument.